IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. CR-06-208-T |
| ) | |
| BOBBIE STACY ANDREWS, ) | |
| ) | |
| Defendant. ) | |

ORDER

Before the court is the petition for payout of funds [Doc. No. 19] filed herein by Richard Lathrop, Camela Lathrop and Joe Laumer ("Lathrops") pursuant to 21 U. S. C. § 853(n)(2), wherein the Lathrops claim an interest in certain property forfeited to the government in accordance with the preliminary order of forfeiture entered in this action [Doc. No. 17]. Also before the court is the claim of Very Fund, L.L.C. [Doc. No. 34] to the forfeited property. The government and the Lathrops submitted briefs in support of their respective positions and stipulated to certain facts as set forth in a joint stipulation [Doc. No. 43]. Pursuant to 21 U. S. C. § 853(n)(4), the court conducted a hearing on March 8, 2007 at which the Lathrops and the government presented oral argument regarding this matter.

Pursuant to seizure warrants issued in this case, the government seized from defendant Andrews two bank accounts at Arvest Bank (the "Arvest accounts") and a Harley-Davidson motorcycle. The Arvest accounts contain a total of $61,427.14. As more fully set out herein, the government proposes that this amount be distributed *pro rata* to provide partial restitution to the victims of defendant's criminal activity in accordance with the restitution ordered in the sentence

imposed by the court; the Lathrops argue that they should recover the entire amount because that amount is the remaining balance of the $112,292.41 they paid to defendant and is directly traceable to the Lathrops. According to the Lathrops, the seized funds are not sufficiently connected to the crimes charged to permit the government to retain the funds; they seek a constructive trust. The government argues that the funds at issue were derived from defendant's criminal activities and are, in fact, attributable to the crimes to which she pled guilty.

The record in this case and the joint stipulation of the government and the Lathrops establishes the facts pertinent to this matter. The parties stipulate that the Information filed in this case [Doc. No. 1] recites two counts for which the Defendant Bobbie Andrews ("Andrews") was charged, to wit: Count 1 for wire fraud in violation of 18 U.S.C. §1343, occurring on about June 22, 2004, and Count 2 for money laundering in violation of 18 U.S.C. §1957, occurring on about July 14, 2004. Count 2 specifically involved a check no. 188774 for $13,956.35 payable to Washington Mutual, which was used to pay a delinquent balance on a note secured by a mortgage on the real property commonly known as 1929 Guilford Court, in Norman, Oklahoma (the "Guilford Property"). The victim of these two crimes was one of the other claimants, Very Fund, LLC ("Very Fund"), whose last transaction with Andrews occurred on March 24, 2005 (Doc. No. 34). Andrews pled guilty and was convicted on these two counts. (Doc. Nos. 11 and 30).

In June of 2005 Andrews solicited investment money from the Lathrops for the purchase of a distressed first mortgage note originally held by Bank One and subsequently held by B & B Funding, L.L.C. (the "B & B mortgage note"), on the Guilford Property. On July 27, 2005, the Lathrops wired funds in the amount of $112,292.41 directly to the Benedum & Benedum trust account, the attorneys for B & B Funding-- not to Andrews -- for the purchase.

Andrews obtained the executed Assignment of Mortgage and Promissory Note, but unlawfully and without the knowledge or permission of the Lathrops, changed the name of the assignee to "Andrews Group Investments, Inc.", instead of to the Lathrops' limited liability company, Allstar Financial, LLC.    Andrews Group Investments, Inc., is an Oklahoma corporation solely owned and operated by Andrews. At the time of the assignment, the Guilford Property was acquired and titled in the name of Georgia Lea Miller ("Miller"). Andrews did not take title to the property until later.

On November 30, 2005, the Guilford Property was sold by Miller to Andrews, wherein the B & B mortgage note and the Washington Mutual mortgage note were paid off by a subsequent mortgagee of Andrews. At closing, Andrews Group Investments, Inc., was paid the amount of $101,000.00 for payment of the B & B mortgage note. Andrews used the funds to open two bank accounts with Arvest Bank, to wit: Account No. ****8928, in the name of Andrews Group Investments, Inc. (in the amount of $95,900.00), and Account No. ****8915 (in the amount of $5,000.00), in the name of Bobbie S. Andrews, individually, and Andrews received the remaining $100.00, in cash. The accounts were opened December 2, 2005, and Andrews was the only authorized signor on these accounts. No other funds were ever deposited into those accounts, and the funds were never co-mingled.

On December 15, 2005, during the course of a criminal investigation of Andrews, the U.S. Secret Service, seized the funds remaining in the Arvest accounts on that date, in the amount of $56,852.09, and $4,575.05, respectively, in Seizure No. 314-2006-002, Secret Service Agency Case No. 314-777-25291-S.6.

On January 20, 2006, the Lathrops sued Andrews in United States District Court for the

Western District of Oklahoma, Case No. CIV-06-0069, and obtained a civil monetary default judgment. In addition, the Lathrops sought equitable relief, including tracing of funds and a constructive trust, related to Andrews' actions in respect to the Lathrops' funds; however, the court reserved such relief for collection proceedings. The Lathrops identified the seized funds and sought the imposition of a constructive trust and the tracing of funds in the civil action, but the court elected to not rule on the matter because of the then-pending criminal proceeding.

Argent Mortgage Company LLC, loaned Andrews the funds for the purchase of the Guilford Property, which proceeds were used to pay Andrews Investment Group, Inc., to pay off the balance of the original Bank One mortgage note, in the amount of $101,000.00; and to pay Washington Mutual Mortgage to payoff its mortgage, in the amount of $170,785.44. 10.

The bank records of Andrews[1] and her related company, Republic Loss Control LLC, Account No. xxx0284 at Republic Bank & Trust, in Norman, Oklahoma, reflect that Andrews was the only signatory on the Republic Loss Control account and the only deposits into that account, other than the $300.00 cash paid to open it, were three wire transfers from Very Fund totaling $1,074,000.00, deposited between May and June of 2004. On July 14, 2004, Andrews wrote a check on this account to purchase a cashiers check No. 1188774 in the amount of $13,956.35, payable to Washington Mutual, which was used to make past due payments on the Washington Mutual mortgage note No. 0046859146, secured by the Guilford Court Property.

On October 2, 2006 Andrews entered a plea of guilty to both counts in the information; in the plea agreement [Doc. No. 11], she also agreed to the forfeiture of the two Arvest accounts at issue here as well as the motorcycle, and she further agreed to cooperate with the government in the

---

[1]The government and the Lathrops have stipulated that all bank records of Andrews and her companies are admissible.

forfeiture of the assets.  The government agreed to seek the court authorization to utilize the forfeited assets to provide restitution to the victims of Andrews' crimes.

On January 30, 2007 Andrews was sentenced, and the judgment and sentence [Doc. No. 30] direct that she serve a term of imprisonment of 46 months for each of the two counts, said terms to be served concurrently.  As part of her sentence, Andrews was also directed to pay restitution to her victims in the total amount of $2,609.592.00 and to forfeit the assets including the two Arvest Bank accounts at issue here and the motorcycle.

In addition to agreeing to pay restitution to the Lathrops and to Very Fund, Andrews agreed in the plea agreement to pay restitution to two other victims, Cathy Ariane in the amount of $60,000.00 and Damon Smyers in the amount of $20,000.00. [Doc. No. 11].

The Arvest Bank accounts were seized by the government pursuant to seizure warrants filed on December 15, 2005. *See* Case Nos. M-05-227-RO and M-05-228-RO.  The seizure warrants were based upon tracing the proceeds from the new Argent mortgage to the Guilford property, as set forth in the affidavits supporting the motions for seizure warrants *Id.; see also* Attachment 1 to government's supplemental brief in response to the Lathrops' corrected brief in support of their petition.

In the order of preliminary forfeiture [Doc. No. 17], the undersigned found that the government had established the requisite nexus between the property consisting of the two Arvest Bank accounts and the motorcycle and the crimes to which Andrews entered her guilty plea.

The government has complied with the requirements of 21 U. S. C. § 853(n)(1) and the preliminary order of forfeiture entered herein by causing notice of the government's intent to dispose of the property and advising any persons claiming an interest in the property to be published; said

notice properly advised such claimants of the necessity of filing a petition to assert said interest and the deadline for doing so. Copies of the publisher's affidavit are filed of record herein [Doc. No. 21].

Pursuant to the notices and in accordance with 21 U. S. C. § 853(n)(2) and (3), the Lathrops timely filed a petition claiming an interest in the property subject to forfeiture; Very Fund, L.L.C. timely submitted correspondence to the court setting forth its interest in the property, and the court deemed such correspondence to be a timely claim to such interest. No other person or entity submitted a petition, and the deadline for doing so has expired.

Property subject to forfeiture in a criminal proceeding is governed by 18 U. S. C. § 982(a)(1), which provides in pertinent part that "The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." In this case, Andrews was charged and pled guilty to a violation of § 1957, money laundering, as well as wire fraud in violation of 18 U. S. C. § 1343. 18 U. S. C. § 981(a)(1)(A) provides in pertinent part that "The following property is subject to forfeiture to the United States: (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956,1957 or 1960 of this title, or any property traceable to such property."

The Lathrops initially contend that the two Arvest accounts should not be included in the forfeited funds because they were not derived from Andrews' fraudulent activity involving the Very Fund or other victims, but were deposited after the crimes charged in the Information. The government argues that the funds were, in fact, a part of the money laundering scheme which

Andrews utilized over a period of time and were directly related to the ongoing scheme of soliciting investor funds for the purported purpose of purchasing mortgages for investment while utilizing such funds for Andrews' personal benefit.  Central to this scheme was the Guilford property which was mortgaged and remortgaged as a part of the money laundering activity in which she engaged.  In fact, the forfeiture allegations in the Information expressly refer to the two Arvest accounts as constituting property constituting or derived from proceeds traceable to the scheme alleged in Count1 therein.

Moreover, the evidence before the court establishes that the seizure warrants resulting in the seizure of the Arvest accounts were issued on the basis of the affidavit setting forth in detail the various transactions in which Andrews had engaged and explaining the basis for the contention that those accounts were derived from her criminal activity.  *See* affidavit submitted as Attachment 1 to government's corrected supplemental brief.  In the preliminary order of forfeiture, the court concluded that the government had established its burden of showing a nexus between the forfeited property, including the Arvest accounts, and Andrews' criminal activity.  The evidence establishes that such conclusion was correct; therefore, the court again finds that the government has met its burden in this regard.

With respect to the Lathrops' claim to an interest in the forfeited property, the forfeiture statutes define their burden of proof.  Pursuant to 21 U. S. C. § 853(n)(2) and (6)(A) and (B), a petitioner claiming a legal interest in property that is the subject of a preliminary order of forfeiture must establish by a preponderance of the evidence that: 1)  he has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title or interest was vested in the petitioner rather than the defendant or was

superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property; or 2) he is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture. In this case, the Lathrops do not claim to be bona fide purchasers. Instead, they argue that they have a legal interest in the Arvest accounts because those accounts can be directly traced to their investment, and their funds were not co-mingled with those of other investors or those derived from other sources.

This case involves both a criminal judgment ordering defendant Andrews to pay more than $2 million in restitution to her victims and a preliminary order of forfeiture of Andrews' assets. The parties acknowledge that this fact pattern is unique and that the Tenth Circuit Court of Appeals has not addressed such circumstances. It is apparent that, regardless of the outcome, the funds seized are inadequate to provide anything close to full restitution to Andrews' victims. The Lathrops ask this court to determine that they are legally entitled to all funds in the two Arvest accounts because those accounts consist only of the remainder of the Lathrops' $112,247.21 which Andrews improperly acquired from them. Thus, they argue that their investment can be traced directly to the Arvest accounts and that the court should imposed a constructive trust over the two accounts in favor of the Lathrops. If the Lathrops prevail and collect the entire amount in the Arvest accounts, they will receive partial restitution; however, neither Very Fund nor any of Andrews' other victims will receive any amount as restitution.

Although this circuit has not addressed a similar question, other circuits and district courts considering criminal and civil forfeitures have dealt with arguments, similar to the Lathrops' argument, that a constructive trust should be applied to funds or property of criminal victims which

can be directly traced and are not co-mingled with other funds. These decisions reflect that, when determining a means of distributing available funds to compensate victims, the court must be guided by equitable principles. "When fashioning a restitution order or imposing a constructive trust, the district court is acting pursuant to its inherent equitable powers." United States v. Durham, 86 F.3d 70, 72 (5th Cir. 1996)(forfeiture and restitution in a money laundering case). In such circumstances, adherence to specific equitable principles, including rules concerning tracing analysis, are 'subject to the equitable discretion of the court.'" *Id.; see also* Securities and Exchange Commission v. Credit Bancorp, Ltd., 2000 W. L. 1752979 *27 (S. D. N. Y. 2000) (securities fraud case); S.E.C. v. Elliott, 953 F.2d 1560, 1569 -1570 (11th Cir.1992) (securities fraud). "The fundamental principle governing adoption of a distribution plan is that it should be equitable and fair, with similarly-situated investors treated alike." Credit Bancorp, at *29; Durham, 86 F.3d at 73. "What is equitable and fair will depend on the circumstances." Credit Bancorp at *29.

The Lathrops ask this court to determine that they are legally entitled to the Arvest accounts because those accounts consist only of the remainder of their $112,292.41 which Andrews improperly acquired from them. Thus, they argue that their investment can be traced directly to the Arvest accounts and that the court should imposed a constructive trust over the two accounts in favor of the Lathrops.

As the Lathrops contend, Oklahoma law permits the imposition of a constructive trust where a party unlawfully obtains legal title to the property of another; in such cases, " equity will impress a constructive trust on property so obtained for one who in good conscience is entitled to it." *See, e.g.,* In re Estate of Wellshear 142 P.3d 994, 999 (Okla.Civ.App. 2006). In some cases, tracing has been applied. *See* Anderson v. Stephens, 875 F.2d 76, 77-80 (4th Cir. 1989) (in a commodities

9

futures fraud scheme, a bank account was frozen by court order; some investors' checks were not deposited until after the account was frozen; the court allowed return of those funds to the investors prior to the *pro rata* distribution of the remaining funds); S.E.C. v. P.B. Ventures, 1991 WL 269982 (E. D. Pa. December 11, 1991) (in a securities fraud case in which investors "loaned" stock certificates to defendants and invested money, the defendants were ordered to disgorge profits; the court imposed a constructive trust on shares of stock and the proceeds of the sales of same, and order a *pro rata* distribution of remaining funds).

However, where the federal court must determine the proper distribution of forfeited funds, it is not required to impose a constructive trust authorized by state or other law where it would be inequitable to do so. "In equity, remedies to which claimants might be entitled to under other law may be suspended if such a measure is consistent with treating all claimants fairly." Credit Bancorp at *29, *citing* United States v. Vanguard, 6 F.3d 222, 226 (4th Cir. 1993). Even if entitlement to trace assets exists under state law, the federal court sitting in equity is not required to apply it. Elliott, 953 F.2d at 1569 (disallowing tracing on equitable grounds in a securities case even though it was available as a contract remedy under state law). "When a party can trace its assets, that party is entitled to seek a constructive trust or equitable lien on its portion of those funds that remain...[but]the court, in exercising its discretionary authority in equity, [is] not obligated to apply tracing." *See, e.g.,* Durham, 86 F.3d at 72-73.

Thus, the question is not whether the Lathrops could be entitled to a constructive trust under Oklahoma or other law, but whether the imposition of same is proper and equitable under these circumstances. Under these facts, the imposition of a constructive trust in their favor would require distribution of the entire Arvest accounts to the Lathrops, leaving nothing to distribute to the other

victims. The facts establish that the Very Fund victims contributed over $2 million to Andrews' scheme prior to the Lathrops' $112,292.41 investment. In pursuing her fraudulent activities, Andrews had disposed of the other victims' money before the Lathrops made their payment. According to the facts, Andrews was under investigation prior to receipt of the Lathrops' funds and, as a part of that investigation, the government learned that she had opened the Arvest accounts which were seized before she had an opportunity to deplete them.

The facts establish that Andrews' victims are similarly situated in that all sought to invest in what they believed to be legitimate endeavors. The difference is the variation in the amounts of their respective losses. The primary difference with respect to the matter now before the court is the fact that, unlike the other victims' funds, Andrews had not yet spent all of the Lathrops' investment at the time the Arvest accounts were seized.

In Durham, the court faced a similar fact pattern. The defendants were involved in a fraudulent loan brokerage scheme; they created "front corporations," purportedly operating a legitimate loan brokerage business, similar to the various companies formed by Andrews in this case.
Although the Durham defendants had various bank accounts throughout the course of their fraudulent conduct, only one account remained at the time defendants' assets were frozen. The majority of the funds in that account could be traced to two of the Durham defendants' thirteen victims; the other victims' funds had been depleted by defendants prior to their arrest on charges of, *inter alia*, wire fraud and money laundering. 86 F.3d at 71-72. Applying 18 U. S. C. § 1345, the court enjoined the defendants from further business and froze the remaining assets; it then proceeded to distribute the remaining assets seized to the victims.

The Durham victims whose funds could be directly traced to the remaining bank account sought a constructive trust in their favor, and argued that the traced funds should be distributed directly to them. The district court disagreed, finding that such a distribution plan would be inequitable to the other victims:

> "The ability to trace the seized funds to Claremont and Northernaire is the result of the merely fortuitous fact that the defrauders spent the money of the other victims first. <u>Allowing Claremont and Northernaire to recover from the funds seized to the exclusion of the other victims under the tracing principle would be to elevate the position of those two victims on the basis of the actions of the defrauders.</u>"

Durham, 86 F.3d at 72, quoting district court (emphasis added). On appeal, the Fifth Circuit agreed, noting that, although tracing would have been permissible, the court was not obligated to apply it, as "the court imposes a constructive trust only 'where equity and justice demand.'" *Id.,* at 73, *quoting* Rosenberg v. Collins, 624 F.2d 659, 663 (5th Cir. 1980). Thus, the court affirmed the lower court's decision to implement a *pro rata* distribution plan. *Id.*

In this case the Lathrops are similarly situated to the two Durham victims who sought a constructive trust because the Lathrops are able to trace their funds only as a result of the "merely fortuitous fact" that the Andrews spent the money of the other victims first. To impose a constructive trust in their favor would elevate their position on the basis of Andrews' conduct, to the detriment of her other victims. The court concludes that such result would be inequitable.

Accordingly, the court concludes that the petition [Doc. No. 19] of the Lathrops must be denied and that their request for imposition of a constructive trust and application of tracing is denied. Although they are entitled to share in the remaining funds, their share and that of the other

victims must be determined according to the governing principles designed to treat all of Andrews' victims equitably. To the extent that the Very Fund claimants seek priority with respect to obtaining a share of the funds in restitution, their request [Doc. No. 34] must also be denied under the application of equitable principles.

IT IS SO ORDERED this 15th day of March, 2007.

_____
RALPH G. THOMPSON
UNITED STATES DISTRICT JUDGE